IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION


IN RE:        THE HOLLADAY HOUSE, INC.,                    Case No. 07-34887-KRH
                                                          Chapter 11
                     Debtor.


**MEMORANDUM OPINION**

Before the Court in this Chapter 11 case is the Motion for Authority to Use Cash Collateral (the "Motion") filed by The Holladay House, Inc. (the "Debtor") on January 30, 2008 pursuant to § 363(c)(2)(B) of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure. The Debtor claims that its use of cash collateral[1] is essential to the Debtor's successful reorganization as it is the only source of funding currently available to the Debtor. Without the cash collateral, the Debtor will not be able to pay its post-petition operating expenses associated with reorganization.

On February 11, 2008, EVB Bank ("EVB") filed an objection to the Motion, and on February 13, 2008, D. M. Reid Associates, Ltd./Mid-Atlantic ("D.M. Reid") filed an objection to the Debtor's Motion. Both EVB and D.M. Reid assert that they have a security interest in all of the Debtor's inventory which interests will not be adequately protected if the Court authorizes the Debtor to use cash collateral. Upon receiving a request for protection from an entity with an interest in property of the estate, the court must condition the use of that property upon the debtor in possession's provision of adequate protection of the entity's interest. 11 U.S.C. § 363(e)

---

[1] Cash collateral "means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents" and "includes the proceeds, products, offspring, rents, or profits of property. . . ." 11 U.S.C. § 363(a) (Supp. V 2005). Accordingly, the proceeds realized by the Debtor from the sale of its furniture inventory in the ordinary course of its retail business would constitute cash collateral. A debtor in possession is prohibited from using cash collateral unless each entity with an interest in the collateral consents or the court authorizes such use. 11 U.S.C. § 363(c)(2) (Supp. V 2005).

(Supp. V 2005).  In any hearing on a motion for relief under § 363 of the Bankruptcy Code, the debtor in possession has the burden of proof on the issue of adequate protection, and any entity asserting an interest in property has the burden of proving the validity, priority or extent of such interest.  11 U.S.C. § 363(p) (Supp. V 2005).  The issues that the Court must decide are whether D.M. Reid and EVB have valid security interests in the Debtor's inventory, and, if so, how any such interest can be protected if the Debtor is allowed to use its cash collateral.

This Court has subject matter jurisdiction to consider and determine this Motion and to resolve these issues pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and (M).  The Court conducted a hearing on February 27, 2008 (the "Hearing").  After reviewing the thorough submissions of the parties and having considered the evidence and the arguments of counsel, the Court finds (i) that D.M. Reid has failed to establish the validity of the security interest it claims in the Debtor's non-consigned inventory, (ii) that EVB has met its burden of establishing a valid security interest in substantially all of the Debtor's assets including its inventory, and (iii) that the conditions the Court has imposed on the Debtor's use of its cash collateral will adequately protect EVB's interest therein.  Accordingly, the objections of D.M. Reid and EVB will be overruled and the Court will grant the Debtor's Motion.

The Debtor is a Virginia corporation engaged in the retail furniture business.  The Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on December 21, 2007 (the "Petition Date").  The Debtor continues to manage and operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.  A creditors' committee has been appointed by the Office of the United States Trustee in this case, but it has not actively participated in this case.

On May 1, 2007, the Debtor executed a promissory note in favor of and entered into a

commercial security agreement with EVB for the original principal amount of $100,070.  In the

commercial security agreement, the Debtor granted EVB a security interest in essentially all of

the Debtor's assets.[2]  The current principal balance due to EVB is approximately $86,070.  On

May 9, 2007, EVB filed a UCC-1 Financing Statement with the State Corporation Commission

for the Commonwealth of Virginia perfecting its security interest in the EVB Collateral.  The

description of the collateral contained in the financing statement was substantially the same as

the description of the collateral contained in the commercial security agreement.  The Debtor has

and continues to make monthly payments of $3,500 to EVB pursuant to terms upon which both

parties have agreed.  The Debtor's inventory was valued at cost as of the Petition Date at

$623,145.07.  The Court concludes that EVB's security interest will be adequately protected by

the large equity cushion that exists in the Debtor's inventory and by the monthly payment of

$3,500 that the Debtor has made and will be required to continue to make to EVB.[3]

---

[2]  The collateral description in the commercial security agreement described the collateral as follows:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

(the "EVB Collateral") Commercial Security Agreement, Ex. C of EVB's Opp'n to Debtor's Mot.

[3]  Additionally, at EVB's request, the Debtor agreed to provide EVB a list of its current inventory.

In September of 2007, the Debtor entered into an agreement with D.M. Reid for it to conduct a 90-day sales promotion event for the Debtor (the "Promotional Sale"). D.M. Reid claims to be a limited liability company that has been engaged for decades in the business of conducting such furniture promotional sales. Pursuant to the terms of a Promotion Agreement dated September 10, 2007,[4] D.M. Reid consigned furniture to the Debtor for sale to consumers in the course of the Promotional Sale. In addition to the Promotion Agreement, D.M. Reid and the Debtor entered into a consignment and security agreement (the "Consignment and Security Agreement"). During the course of the Promotional Sale, D.M. Reid claims that it extended credit to the Debtor and that as of the Petition Date, it was owed $172,437.88.

The Debtor does not dispute that D.M. Reid has a valid, properly perfected security interest in the inventory that was consigned to it by D.M. Reid.[5] The Debtor disputes, however, that D.M. Reid has a valid, properly perfected security interest in its other non-consigned inventory, claiming that any such security interest was not properly perfected. Section C.2. of the Consignment and Security Agreement provides: "Consignee grants to Consignor a continuing security interest in all of the Collateral, which security interest is to secure the prompt, punctual, faithful, and complete payment and performance of all the Obligations." The term "Obligations" is defined in Section A.4. of the Consignment and Security Agreement to mean all debts, liabilities and obligations of the Debtor to D.M. Reid, including those arising

---

[4] The promotion agreement was amended by addendum dated September 24, 2007 (as amended, the "Promotion Agreement").

[5] On January 18, 2008, D.M. Reid filed a Motion for Relief from the Automatic Stay of § 362 of the Bankruptcy Code seeking permission from the Court to repossess its consigned inventory. The Court granted interim relief by order entered February 6, 2008. The Court was advised by the parties at the final hearing conducted on February 27, 2008, that an agreement had been reached for the return of the entire consigned inventory and that a consent order would be submitted for the Court's consideration. The approximate value of the collateral to be returned to D.M. Reid pursuant to that agreement is $70,000. The Court subsequently entered its Final Order Granting Motion for Relief from Stay on March 5, 2008.

4

under the Consignment and Security Agreement as well as under the Promotion Agreement.

Section A.3. of the Consignment and Security Agreement defines the term "Collateral" as "all

inventory other than Consigned Inventory, whether now existing or hereafter arising or acquired,

and wherever located, and all proceeds and products thereof. . . ."

On or about September 18, 2007, D.M. Reid timely filed a form UCC-1 financing

statement with the State Corporation Commission for the Commonwealth of Virginia (the

"Financing Statement").[6]   Section 4 of the Financing Statement states that the Financing

Statement covers the following collateral:  "SEE ATTACHED LIST."  Attached to the Financing

Statement is a single page entitled "Attachment UCC 1. . . The Holladay House, Inc. Aylett,

VA." (the "Attached List").  The Attached List describes D.M. Reid's collateral more narrowly

than does the Consignment and Security Agreement.  The Attached List states that the collateral

covered by the Consignment and Security Agreement is "[a]ll inventory, furniture and

furnishings of every kind, accessories, goods, merchandise, finished inventory, *delivered to*

*consignee at any time by consignor pursuant to a consignment agreement between the consignee*

*and consignor*, whether now existing or hereafter arising, wherever located, and all proceeds

thereof."  UCC-1 Financing Statement, Ex. C of D.M. Reid's Opp'n to Debtor's Mot. (emphasis

added).[7]

In addition to the form UCC-1 and the Attached List, D.M. Reid filed with the State

Corporation Commission the Consignment and Security Agreement.  Neither the Financing

---

[6]  The format for the national form UCC-1 is set forth in Va. Code § 8.9A-521.

[7]  The Attached List also contains the following notice:
> NOTICE OF CONSIGNMENT:   The foregoing property has been or will be delivered by
> consignor to consignee on consignment exclusively.   This financing statement is intended to
> protect the rights of the consignor.  The inclusion herein of proceeds is not intended and shall not
> have the effect of constitution [sic] consent of the Consignor to the disposition of the property in a
> manner inconsistent with the restrictions imposed in said consignment agreement.

Statement nor the Attached List reference or incorporate in any way the filed Consignment and

Security Agreement.  D.M. Reid argues that filing the Consignment and Security Agreement

with the Financing Statement served to perfect its security interest in all of the Debtor's

inventory, despite the fact that the Consignment and Security Agreement is not incorporated into

the Financing Statement.

The scope of any security agreement entered into prior to a debtor's bankruptcy filing is

to be determined by the agreement and by non-bankruptcy law.  As the Debtor and the collateral

are located in Virginia, Virginia law governs the creation and perfection of a security interest in

the Debtor's assets.  Va. Code Ann. § 8.9A–301(1)–(2) (Supp. 2007).  Article 9 of the Uniform

Commercial Code as adopted in Virginia governs consensual security interests in personal

property.  Va. Code Ann. tit. 8.9A, §§ 101–709 (Supp. 2007).  Section 8.9A–203(b) sets forth

three basic prerequisites to the existence of an enforceable security interest.  First, value must be

given for the security interest;[8] second, the debtor must have rights in the collateral sufficient to

convey the security interest;[9] and third, if the collateral is not in the possession or under the

control of the secured party, the debtor must sign a security agreement that contains a description

of the collateral.  Va. Code Ann. § 8.9A–203(b) (Supp. 2007).

Attachment is the term used by Article 9 of the Uniform Commercial Code to describe

the moment at which a security interest becomes enforceable against the debtor.  Va. Code Ann.

§ 8.9A–203(a) (Supp. 2007).  In order for an attached security interest to prevail over a third-

party creditor using judicial process to obtain a lien on collateral, including a trustee in

---

[8]  Value is given when there is any consideration sufficient to support a simple contract.

[9]  Revised Article 9 clarifies that a power of the debtor to transfer collateral is sufficient to satisfy the "rights in collateral" requirement.  *See* Va. Code Ann. § 8.9A–203(b)(2) cmt. 6 (Supp. 2007).

bankruptcy,[10] it must be perfected.  A bankruptcy trustee's interest will have priority over any lien that is not perfected.  *Vienna Park Props. v. United Postal Sav. Ass'n (In re Vienna Park Props.)*, 976 F.2d 106, 115 (2d Cir. 1992) (applying Virginia law).

There exist three primary ways in which an attached security interest may be perfected. First, the secured party may file a properly completed financing statement in the appropriate UCC filing offices.  Va Code Ann. § 8.9A–310 (Supp. 2007).  Second, the secured party may take possession of the collateral or, in certain cases, control.  Va. Code Ann. § 8.9A–313 (Supp. 2007); Va. Code Ann. § 8.9A–314 (Supp. 2007).  Third, in some cases such as a purchase-money security interest in consumer goods, the security interest may be perfected automatically upon attachment.  Va. Code Ann. § 8.9A–309(a) (2001).  Most security interests can or must be perfected by filing a properly completed financing statement.  Va. Code Ann. § 8.9A–310 (Supp. 2007).  As D.M. Reid did not have possession or control of the collateral, it was required to perfect its security interest by filing a financing statement.  The formal requirements for a properly completed financing statement are that it must (1) provide the name of the debtor, (2) provide the name of the secured party, and (3) indicate the collateral covered by the financing statement.  Va. Code Ann. § 8.9A–502(a) (2001).

The filing of a financing statement in the appropriate UCC filing office is designed to give notice to third parties of the existence of the lien.  *SunTrust Bank v. Hudgins (In re Sys. Eng'g & Energy Mgmt.)*, 284 B.R. 226, 230–32 (Bankr. E.D. Va. 2002); *Fed. Deposit Ins. Corp v. Victory Lanes*, 158 B.R. 617, 620 (E.D. Va. 1993).  This system of notice filing contemplates further inquiry by such a third party in order to determine whether a particular asset is covered

---

[10]  Pursuant to § 544(a)(1) of the Bankruptcy Code a trustee has the status of a judgment lien creditor as of the petition date.  A debtor in possession generally has the rights and powers of a trustee serving in a case.  *See* 11 U.S.C. § 1107(a) (2000).

7

by a security agreement. *Hixon v. Credit Alliance Corp.*, 235 Va. 466, 470–71, 369 S.E.2d 169, 172 (1988). The financing statement need only be "sufficiently descriptive" of the collateral in order to generate the requirement for further inquiry. *Varney Wood Prods. v. Strickler (In re Varney Wood Prods., Inc.)*, 458 F.2d 435, 437 (4th Cir. 1972). It may reference the collateral by item or by type of collateral defined in the Uniform Commercial Code. *See* Va. Code Ann. § 8.9A–108 (2001); Va. Code Ann. § 8.9A–504 (2001).[11] Applicable case law makes clear that a financing statement meets its burden of giving reasonable notice fairly easily. *Mahon v. U.S. Farmers Home Admin. (In re Mahon)*, 82 B.R. 33, 34 (Bankr. W.D. Va. 1988).

> The code has rejected "exact and detailed" descriptions in favor of those which reasonably identify what is described. . . . Furthermore, the code has adopted a system of "notice filing" which contemplates further inquiry in order to determine whether a given asset is covered by a security agreement. . . . All that is required under the code, then, is that the financing statement be sufficiently descriptive so as reasonably to generate further inquiry.

*Varney*, 458 F.2d at 436–37 (citations omitted).

A sufficient description of the collateral is required "to put third parties on notice of a possible lien on the collateral described, and when a description is insufficient, any lien is limited to the collateral properly described." *SunTrust Bank*, 284 B.R. at 232 (citations omitted). Where the description is seriously misleading or simply insufficient, a third party creditor or a trustee in bankruptcy will be "entitled to prevail against the creditor claiming under the defective financing statement." *See I. A. Durbin, Inc. v. Jefferson Nat'l Bank (In re I. A. Durbin, Inc.)*, 46 B.R. 595, 599 (Bankr. S.D. Fla. 1985) (citations omitted).

The description of the collateral that D.M. Reid used in its Financing Statement is narrower than that found in the Consignment and Security Agreement. A financing statement, more limited in scope than the security agreement which it perfects, limits the collateral in which

---

[11]   A financing statement sufficiently indicates the collateral that it covers if the financing statement reasonably identifies what is described. Va. Code Ann. § 8.9A–108(a) (2001).

the creditor has a perfected interest to that described in the financing statement as against third-party creditors and a trustee in bankruptcy. *Northwest Acceptance Corp. v. Lynnwood Equip. Inc.*, 841 F.2d 918, 921 (9th Cir. 1988); *see also Gulf Nat'l Bank v. Franke (In re Katz)*, 563 F.2d 766, 768–69 (5th Cir. 1977). The presence of qualifying language in a financing statement functions to limit the scope of perfection of the secured creditor's security interest. "Where a secured creditor elects to describe specific property rather than 'types', *i.e.*, inventory. . . the creditor is perfected only to the property so described and not to other property of the same type." *I.A. Durbin*, 46 B.R. at 600, (citing *Gulf Nat'l Bank*, 563 F.2d at 768; *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124 (2d Cir. 1973)); *see also Sweney v. Cardinal Doors, Inc. (In re Door Supply Ctr.)*, 3 B.R. 103, 105–06 (Bankr. D. Idaho 1980) ("A financing statement, if more limited in scope than the security agreement which it perfects, limits the collateral in which the creditor has a perfected security interest to that description as against third party creditors and a trustee in bankruptcy.") (citations omitted).

The language in the Attached List to the Financing Statement limits D.M. Reid's perfected security interest to the inventory that it delivered to the Debtor. D.M. Reid did not perfect its security interest in all of the other inventory owned by the Debtor.

D.M. Reid cites to the case of *SouthTrust Bank v. Orix Fin. Servs. (In re Mgmt. by Innovation, Inc.)*, 321 B.R. 742 (Bankr. M.D. Fla. 2005) for the proposition that the filing of the Consignment and Security Agreement was sufficient to put third parties on inquiry notice. In that case, as well as in other cases cited by D.M. Reid, the financing statement not only referred to certain property and equipment of the debtor but also incorporated other collateral described in an attached agreement. *See, e.g., Leasing Service Corp.*, 894 F.2d 1287, 1290–91 (11th Cir. 1990); *Hixon*, 235 Va. at 469–70, 369 S.E.2d at 171–72. In *SouthTrust Bank*, the attached

9

agreement granted the secured party a blanket lien on all of the debtor's personal property.  The

court held that by incorporating the attached security agreement into the financing statement, a

third-party creditor would be put on inquiry notice to read the attachment in order to determine

the scope of the secured party's lien.  *SouthTrust Bank*, 321 B.R. at 745–46.  D.M. Reid argues

by analogy that any reasonable creditor reviewing the Financing Statement in this case would

have looked not only at the Financing Statement and the Attached List, but also to the

Consignment and Security Agreement that was filed with it.  It contends that the filing of the

Consignment and Security Agreement was sufficient to put third parties on inquiry notice of the

security interest claimed by D.M. Reid in all of the Debtor's inventory even though it was not

incorporated into the Financing Statement.  D.M. Reid was unable to cite a single case that was

on point in support of its argument.

Courts have routinely held that creditors may incorporate by reference security

agreements into financing statements and that such incorporation is sufficient notice.  *See, e.g.,*

*Leasing Service Corp.*, 894 F.2d at 1290–91; *SouthTrust Bank*, 321 B.R. at 744–46; *In re Tebbs*

*Constr. Co.*, 39 B.R. 742, 747–48 (Bankr. E.D. Va. 1984); *Hixon*, 235 Va. at 469–70, 369 S.E.2d

at 171–72.  The courts in these cases have observed that the clear reference in the financing

statement to the collateral listed in the underlying security agreement makes clear that a

reasonably diligent title searcher would not limit the search solely to the financing statement.

*See, Leasing Service Corp.*, 894 F.2d at 1290 (stating that direct reference to specific agreement

puts the reader on notice to read the entire underlying agreement).  Where no such reference is

expressly made by the financing statement, a reasonable title searcher is under no duty or

obligation to do anything but rely upon the indication of collateral in the financing statement.

The mere existence of a financing statement does not trigger a duty for third parties to inquire

10

into the terms of the underlying security agreement.  It does not create any duty to inquire into

collateral that is not sufficiently described in the financing statement.  *See In re I.A. Durbin*, 46

B.R. at 601 ("The mere filing of a financing statement, does not create a mandatory duty upon

third parties to contact the debtor or creditor in every instance.  Rather it is only when the

financing statement contains a sufficient description of the type or item of collateral that the duty

to pursue further inquiry arises.") (citations omitted).

D.M. Reid's Financing Statement did not put third parties on notice of a need to inquire

about a security interest in collateral outside the scope of the assets included in the collateral

description on the Attached List.  After reviewing D.M. Reid's financing statement, a reasonably

diligent title searcher would have had a very clear understanding of the scope of collateral

included in the Financing Statement and thus would have limited the examination to the

Attached List.  D.M. Reid's Financing Statement put third parties on notice that it had a security

interest in "[a]ll inventory, furniture and furnishings . . . delivered to consignee . . . by

consignor. . . ."  The collateral description did not put third parties on notice of any asserted

security interest in non-consigned items.  To the contrary, the Financing Statement specifically

limited the security interest to inventory that D.M. Reid supplied to the Debtor.

The mere act of filing the Consignment and Security Agreement, without more, did not

remedy the insufficient description of the collateral in the Financing Statement.  Filing the

Consignment and Security Agreement did not by itself create any heightened standard of

scrutiny, especially given the clear contradictory language in the Financing Statement.  Such

filing did not trigger an obligation on the part of a third party to read the Consignment and

Security Agreement as expanding the scope of the collateral sufficiently described in the

Financing Statement.  A reasonable title examiner would most likely have concluded that the

11

Consignment and Security Agreement was filed to clarify, not contradict, the wording of the

Financing Statement.  The collateral was limited to "inventory, furniture and furnishings . . .

delivered to consignee at any time by consignor *pursuant to a consignment agreement between*

*the consignee and consignor. . . ."*  UCC-1 Financing Statement, Ex. C of D.M. Reid's Opp'n to

Debtor's Mot. (emphasis added).   The Consignment and Security Agreement was filed to

identify the agreement under which the inventory was to be delivered.  It was filed to clarify that

the collateral did not include inventory delivered by D.M. Reid pursuant to any other agreement

between the parties.

A reasonable title searcher could conclude that one of any number of reasons exist why

the collateral described in the Financing Statement is more limited in scope than the security

agreement which it perfects.  As the Debtor observes, it is not unusual for a form document to

include more expansive language than what the parties negotiate in a specific commercial

transaction.  Giving the Consignment and Security Agreement the effect that D.M. Reid suggests

would make the description of the collateral set forth in the Financing Statement seriously

misleading.  *Cf. I. A. Durbin, Inc.,* 46 B.R. at 601 (holding that the description of collateral in a

financing statement was seriously misleading where a third party could interpret the financing

statement as showing a "security interest only in those assets specifically described in the real

property mortgage" and that would be confirmed by reading the mortgage in the public records,

but the financing statement did not provide notice of a security interest in the debtor's contract

receivables).   The Financing Statement expressed the clear intent to limit the scope of the

security interest to the consigned inventory.  The Financing Statement did not put third parties on

inquiry notice regarding the scope of the security interest to which D.M. Reid now claims it is

12

entitled.[12]    As a result, the Court concludes that D.M. Reid does not hold a valid, properly

perfected security interest on all of the Debtor's inventory.  Rather, D.M. Reid's security interest

is perfected only to the extent that it attaches to inventory that D.M. Reid delivered to the Debtor

pursuant to the terms of the Consignment and Security Agreement.

The Court has previously granted D.M. Reid relief from the automatic stay to pursue

recovery of the consigned inventory that it delivered to the Debtor.[13]    As the Debtor's Motion

asks the Court to approve its use of proceeds generated from the sale of non-consigned

inventory, it does not seek the use of any of D.M. Reid's collateral.

Accordingly, the objections of EVB and D.M. Reid to the Debtor's Motion for Authority

to Use Cash Collateral will be overruled.  A separate order approving the use of cash collateral

and conditioning such use in order to adequately protect the interest of EVB therein shall issue.


ENTERED:  _____


                                   /s/ Kevin R. Huennekens          
                                   UNITED STATES BANKRUPTCY JUDGE

---

[12]    D.M. Reid's Motion for Relief from Stay did not assert a security interest in the Debtor's non-consigned
inventory.  See note 6 *supra.*

[13]  See note 6 *supra.*

Copies to:

Roy M. Terry, Jr.
Elizabeth L. Gunn
DurretteBradshaw, PLC
600 E. Main St., 20th Fl.
Richmond, VA  23219

David R. Ruby, Esquire
McSweeney, Crump, Childress & Temple, P.C.
Post Office Box 1463
Richmond, VA  23218

Thomas W. Heintschel
Frederickson, Heintschel & King Co., L.P.A.
405 Madison Avenue, Suite 1212
Toledo, Ohio  43604

Archie C. Berkeley, Jr.; VSB No: 12581
BERKELEY & DeGAETANI
1301 North Hamilton Street, Suite 200
Richmond, VA  23230-3959

Robert B. Van Arsdale
Office of the U. S. Trustee
600 East Main Street, Suite 301
Richmond, VA  23219